**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT CREWS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TITLEMAX OF DELAWARE, INC., TITLEMAX OF OHIO, INC., TITLEMAX OF VIRGINIA, INC., TMX FINANCE OF VIRGINA, INC., TITLEMAX OF CALIFORNIA, INC., TITLEMAX OF SOUTH CAROLINA, INC., TITLEMAX OF GEORGIA, INC., and TMX FINANCE CORPORATE SERVICES, INC.,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff Robert Crews ("Plaintiff" or "Crews"), individually and on behalf of all others similarly situated, brings this action against Defendants TitleMax of Delaware, Inc., TitleMax of Ohio, Inc., TitleMax of Virginia, Inc., TMX Finance of Virginia, Inc., TitleMax of California, Inc., TitleMax of South Carolina, Inc., TitleMax of Georgia, Inc., and TMX Finance Corporate Services, Inc. (collectively "Defendants" or "TitleMax"), and alleges as follows:

## NATURE OF THE ACTION

1. This action concerns Defendants' violations of the Loan Interest and Protection Law ("LIPL"), 41 P.S. §§ 101, *et seq.*, the Consumer Discount Company Act ("CDCA"), 7 P.S. §§ 6201, *et seq.*, and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq*.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d).

3. The Court has personal jurisdiction over Defendants because the claims at issue arose in this district and Defendants do substantial business in this district.

4. Venue is proper under 28 U.S.C. § 1391.

## PARTIES

5. Crews is a person residing in York County, Pennsylvania.

6. Defendants are corporations with principal places of business in: California (TitleMax of California, Inc.); Delaware (TitleMax of Delaware, Inc.); Georgia (TitleMax of Georgia, Inc., and TMX Finance Corporate Services, Inc.); Ohio (TitleMax of Ohio, Inc.); South Carolina (TitleMax of South Carolina, Inc.); and Virginia (TitleMax of Virginia, Inc., and TMX Finance of Virginia, Inc.).

7. TMX Finance Corporate Services, Inc. is referred to as "TMX."

8. The other Defendants are referred to as the "State Defendants."

9. TMX and the State Defendants are referred to as "Defendants."

10. If Plaintiff discovers other entities affiliated with Defendants engaged in the conduct detailed herein and made or collected loans from Pennsylvanians, Plaintiff reserves the right to add such additional defendants.

## PENNSYLVANIA'S CONSUMER FINANCE LAWS

11. "[T]he prohibition of exploitative lending is a fundamental public policy that cannot be circumvented." *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 759 n.9 (Pa. 2008).

12. To that end, the LIPL prohibits charging more than 6% simple interest per year. 41 P.S. § 201(a).

13. Non-banks can exceed this limit if they are licensed under a law called the CDCA. *See, e.g.*, 7 P.S. § 6213.E (allowing discount interest at varying rates of up to about 28% on pre-computed loans); *id.* § 6217.1.A. (allowing simple interest at rates of up to 24% on revolving loans).

14. But non-banks without Pennsylvania licenses may not charge, collect, contract for, or receive interest and fees that aggregate in excess of the LIPL's 6% cap. 7 P.S. § 6203.A; 41 P.S. § 201(a).

15. The protections of the LIPL and CDCA may not be circumvented or waived. 7 P.S. §§ 6203.B, 6211; 41 P.S. § 408.

16. Violations of the LIPL and CDCA qualify as misdemeanors and are punishable by fine and/or imprisonment. 41 P.S. § 505; 7 P.S. § 6218.

## FACTUAL ALLEGATIONS

***Facts Relevant to Crews***

17. At the end of 2021, Crews' work slowed down and he began searching for lenders to bridge the gap until the new year.

18. Crews found Defendants through an internet search.

19. Crews was told he needed to drive to Delaware to obtain the loan so Defendants could inspect his car.

20. Although this was not ideal, another lender previously denied credit to Crews and Crews believed he could repay the loan quickly after the new year.

21. Eventually, Crews travelled to Delaware to obtain a loan from Defendants.

22. Once Crews arrived, one of Defendants' managers repeatedly assured Crews that the interest rate would be 12%.

23. On December 8, 2021, Defendants issued Crews a $7,400 loan.

24. Once Crews downloaded Defendants' mobile app to view his loan, he discovered that, contrary to Defendants' claims, the loan applied an APR of 155.62% over a 48-month repayment period, which yields a total interest charge of $39,243.91 for a $7,400 loan.

25. To ensure his $7,400 loan did not go into default, Crews needed to pay $973.48 per month for 48 months (or four years).

26. Crews was able to make the first payment on his loan.

27. Crews made this payment from Pennsylvania by way of Defendants' mobile app.

28. The loan was secured by a 2017 Ford Fusion, which Crews owns.

29. The vehicle is kept, licensed, registered, and titled in Pennsylvania.

30. After issuing the loan, Defendants intended to record a lien on Crews' car with the Pennsylvania Department of Transportation, but have not yet done so.

31. Crews' loan will go into default if he is unable to repay the loan.

32. Defendants' loan agreement represents Defendants may repossess Crews' vehicle if Crews' loan goes into default.

33. The $39,243.91 in interest Crews must pay to keep his loan current and to prevent his vehicle from being repossessed by Defendants is money Crews needs to pay basic living expenses, like clothing, food, housing, healthcare, and transportation.

34. Further, if Crews cannot afford to divert money he needs for basic living expenses, and his vehicle is repossessed, Crews will be unable to use his vehicle to travel to work or obtain food and any healthcare services he or his family may require.

35. Crews will suffer irreparable harm whether he makes payments or not, putting him in an untenable and unsustainable position.

***TitleMax's Lending Practices***

36. Defendants comprise an organization that consists of 18 state-based entities, which include the State Defendants, and TMX, which oversees the operations of the state-based entities.

37. Defendants' organization offers loans to Pennsylvania consumers through the State Defendants.

38. Defendants advertise their loans to Pennsylvania residents by phone, television, and the internet, and direct Pennsylvania residents to visit Defendants' stores.

39. When Defendants issue loans to Pennsylvania residents, a lien is filed in Pennsylvania against the borrower's car, and the borrower's Pennsylvania address is placed on the first page of the loan agreement.

40. To date, Defendants have extended loans to thousands of Pennsylvania residents.

41. Each loan is made without regard to a consumer's ability to repay.

42. Each loan provides for an annual percentage rate that far exceeds 100%.

43. Each loan is secured by the title of a motor vehicle, against which a lien is recorded with the Pennsylvania Department of Transportation.

44. Each vehicle used to secure a loan made to a Pennsylvania resident is kept, licensed, registered, and titled in Pennsylvania.

45. Each loan represents that Defendants may repossess the vehicle used to secure the loan if the loan goes into default.

46. Defendants must enter Pennsylvania to repossess any vehicles used to secure any of Defendants' loans.

***Defendants' Actions are Unlawful***

47. Defendants are not and have never been depository institutions.

48. Defendants are not and have never been licensed under the CDCA.

49. This means Defendants cannot charge, collect, contract for, or receive interest and fees above 6%. 41 P.S. § 201(a); 7 P.S. § 6203.A.

50. Nevertheless, Defendants regularly issue loans with interest and fees that aggregate in excess of 100%-150%, and regularly charge, collect, contract for, and receive such amounts from Pennsylvania consumers.

51. Defendants cannot charge, collect, contract for, or receive greater than 6% interest from Pennsylvania residents, let alone the greater than 100%-150% interest and fees that Defendants regularly charge, collect, contract for, and receive from Pennsylvania consumers.

52. Rather than charge, collect, contract for, or receive interest and fees that are allowed under Pennsylvania law, Defendants place a Delaware choice of law clause in their loan contracts in an attempt to waive the protections that Pennsylvania consumers are afforded under the laws of the Commonwealth.

53. Defendants include this choice of law clause because Delaware does not limit the amount of interest and fees lenders can charge Delaware consumers.

54. The problem with this practice is that the protections of the CDCA and the LIPL are non-waivable. *See* 7 P.S. §§ 6203, 6211; 41 P.S. § 408.

55. Further, to the extent Defendants claim their practice is legal because the loans at issue were made in Delaware, their contention is wrong.

56. Defendants advertise and make the loans at issue to Pennsylvanians, who then pay the loans from Pennsylvania.

57. To secure each loan, Defendants acquire a security interest in motor vehicles that are kept, licensed, registered, and titled in Pennsylvania.

58. Defendants know they are lending money to Pennsylvania residents, as Defendants instruct Pennsylvania residents to visit their stores, place Pennsylvania addresses on loans, and record liens against motor vehicles with the Pennsylvania Department of Transportation.

*59.* The Third Circuit found identical practices are subject to Pennsylvania law. *TitleMax of Del., Inc. v. Weissmann,* No. 21-cv-01020, 2022 U.S. App. LEXIS 1937 (3d Cir. Jan. 24, 2022); *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616 (3d Cir. 2009); *see also Mayo v. TitleMax of Del.*, No. 21-cv-02964, 2022 U.S. Dist. LEXIS 2573 (E.D. Pa. Jan. 4, 2022); *Gregoria v. Total Asset Recovery, Inc.*, No. 12-cv-04315, 2015 U.S. Dist. Lexis 1818, at *4, 7-11 n.6 (E.D. Pa. Jan. 7, 2015).

60. Defendants' practice of inserting Delaware choice of law clauses in loan contracts, and of advertising and making loans to Pennsylvania residents in states that border Pennsylvania, even though Defendants know borrowers reside in Pennsylvania, know borrowers make payments from Pennsylvania, and know the motor vehicles that secure loans are kept, licensed, and registered in Pennsylvania, is a subterfuge to evade Pennsylvania law.

61. For more than a century, Pennsylvania and federal courts have held that lenders cannot evade usury laws by circumvention. *Simpson v. Penn Disc. Corp.*, 5 A.2d 796, 798 (Pa. 1939); *Saunders v. Resnick*, 16 A.2d 676, 678 (Pa. Super. 1940); *Moll v. Lafferty*, 153 A. 557, 558-59 (Pa. 1931); *Walnut Disc. Co. v. Weiss*, 208 A.2d 26 (Pa. Super. 1965); *see also Mo., Kan. & Tex. Trust Co. v. Krumseig*, 172 U.S. 351, 355-56 (1899); *Scott v. Lloyd*, 34 U.S. 418 (1835).

***Defendants' Actions Cause Substantial Harm to Pennsylvania Consumers***

62. It is virtually impossible to pay Defendants' loans because Defendants' illegal practices add tens of thousands of dollars of unlawful interest and fees to the loans Defendants issue to Pennsylvania residents.

63. For example, had Defendants loaned Crews money at the lawful rate, he would have paid $941.88 in total interest and his monthly payments would have been $173.79.

64. These amounts are over $38,000 less than the total interest Defendants seek to charge ($39,243.91 of illegal interest compared to $941.88 of legal interest), and almost $800 less than the monthly payments that Crews currently owes ($973.48 of illegal payments compared to $173.79 of legal payments).

65. By making it extremely difficult to repay their loans, Defendants all but ensure that consumers will default and that they will lose valuable assets in the form of repossession of the motor vehicles that secure Defendants' loans.

66. Not only that, but consumers are not fairly compensated for the motor vehicles that are lost to Defendants' illegal scheme because the principal balances of Defendants' loans amount to only a fraction of the value of the vehicles that secure Defendants' loans.

67. Effectively, Defendants' illegal lending practices force Pennsylvania's residents into choosing whether they should: i) pay principal balances many times over to avoid default due to illegal interest and fees; or ii) give up their vehicles to Defendants at a substantial discount of the vehicle's face value.

68. With respect to the few consumers that can avoid default, Defendants' practice forces them to pay tens of thousands of dollars in illegal interest and fees, which diverts tens of thousands of dollars those individuals need for basic expenses, like housing, food, clothing, healthcare, and other costs.

69. And for the vast majority of consumers, for which default is inevitable, Defendants' practice results in those individuals losing a valuable asset without any compensation, which leaves these individuals unable to work, obtain health services, buy clothes or food, or engage in a host of other activities necessary to live.

70. Defendants' conduct has caused and will continue to cause substantial and irreparable harm to Pennsylvania residents.

## CLASS ACTION ALLEGATIONS

71. Plaintiff brings this action individually and on behalf of all others similarly situated under Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

72. Plaintiff seeks to certify the following damage class: "All Pennsylvania residents who obtained a loan from Defendants or any affiliated companies and paid interest and fees that aggregated in excess of 6% simple interest per year within the applicable statute of limitations."

73. Plaintiff also seeks to certify the following equitable relief class: "All Pennsylvania residents who obtained or will obtain a loan from Defendants or any affiliated companies and whose loan provides for or will provide for interest and fees that aggregate in excess of 6% simple interest per year."

74. Plaintiff reserves the right to expand, narrow, or otherwise modify the classes as the litigation continues and discovery proceeds.

75. Fed. R. Civ. P. 23(a)(1): The classes are so numerous that joinder is impracticable. There likely are thousands of members of the classes. Each class is identifiable by the records of Defendants, Plaintiff and the class members, and the Pennsylvania Department of Transportation.

76. Fed. R. Civ. P. 23(a)(2), (b)(3): Plaintiff and the class members share numerous common questions of law and fact that will drive the resolution of the litigation and predominate over individual issues. For example, there is a single common answer to whether Defendants can charge, collect, contract for, and receive interest and fees that aggregate in excess of the rates and amounts set forth in the LIPL or CDCA. This question, and other common questions, predominate over any individual issues.

77. Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of the claims of the classes because the claims of Plaintiff and the classes are based on the same legal theories and arise from the same conduct.

78. Fed. R. Civ. P. 23(a)(4): Plaintiff is an adequate representative of the classes because the interests of Plaintiff and the class members align. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the classes and has no interest antagonistic to the classes. Plaintiff retained counsel who are competent and experienced in the prosecution of class action litigation generally and consumer finance litigation specifically.

79. Fed. R. Civ. P. 23(b)(3): Given the complexity and nature of the issues presented and the relief requested, the expense and time necessary to obtain such relief, and the anticipated recovery and relief Plaintiff and the class members may obtain, the class action mechanism is by far the preferred and most efficient litigation mechanism to adjudicate the claims of Plaintiff and the class members. Additionally, requiring Plaintiff and the class members to file individual actions would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. Class treatment presents far fewer management difficulties and provides benefits of a single adjudication and economies of scale.

80. Fed. R. Civ. P. 23(b)(2): Defendants acted or refused to act on grounds that apply generally to the classes, such that final injunctive, equitable, or declaratory relief is appropriate respecting the classes as a whole. The injunctive, equitable, and declaratory relief requested in this action applies equally to Plaintiff and the class members.

**COUNT I**
**Violation of the Loan Interest and Protection Law**
**41 P.S. §§ 101, *et seq.***

81. This claim is brought individually and on behalf of the classes.

82. Plaintiff and the class members are persons who paid a rate of interest in excess of the amount provided for by the LIPL and CDCA, and who paid charges prohibited by or in excess of the amount allowed by the LIPL and CDCA.

83. Defendants charged and collected, and continue to charge and collect from Plaintiff and the class members, interest in excess of that provided for by the LIPL and CDCA, and charges prohibited by or in excess of the amount allowed by the LIPL and CDCA.

84. The LIPL provides for, among other things, damages, declaratory and injunctive relief, and attorneys' fees and costs. 41 P.S. §§ 501, 502, 503.

85. Accordingly, the Court should issue an order: i) awarding Plaintiff and the classes any excess interest, fees, or other charges paid to Defendants; ii) awarding Plaintiff and the classes triple the amount of any excess interest, fees, or other charges paid to Defendants; iii) awarding Plaintiff and the classes their attorneys' fees and costs; iv) declaring Pennsylvania residents need not pay any interest or fees that aggregate in excess of 6% to Defendants; v) prohibiting Defendants from charging, collecting, contracting for, or receiving interest and fees that aggregate in excess of 6% from any Pennsylvania resident; vi) requiring Defendants to take all necessary actions to release all remaining liens registered with the Pennsylvania Department of Transportation against Plaintiff and the classes and convey proper vehicle title to Plaintiff and the classes; vii) prohibiting Defendants from furnishing derogatory information regarding Plaintiff and the classes to any consumer reporting agencies; and viii) awarding all other relief that is necessary and proper.

**COUNT II**
**Violation of the Consumer Discount Company Act**
**7 P.S. §§ 6201, *et seq.***

86. This claim is brought individually and on behalf of the classes.

87. Defendants are not and have never been depository institutions.

88. Defendants are not and have never been licensed under the CDCA or any other Pennsylvania statute.

89. Consequently, Defendants could not and cannot charge, collect, contract for, or receive more than 6% combined interest and fees on loans issued in amounts under $25,000. 7 P.S. § 6203.A; 41 P.S. § 201(a).

90. Defendants, however, have charged, collected, contracted for, or received, and continue to charge, collect, contract for, and receive, interest and fees that aggregate in excess of 6% on loans that were issued to Plaintiff and the classes in amounts of $25,000 or less.

91. Equitable relief is available to private parties under the CDCA. *Mellish v. CACH, LLC*, No. 19-cv-01217, 2020 U.S. Dist. LEXIS 52383, at *7 (W.D. Pa. Mar. 26, 2020) ("If a private civil litigant seeks enforcement of the CDCA, the available remedy is equitable[.]").

92. Accordingly, the Court should issue an order: i) awarding Plaintiff and the classes restitution in the amount of any excess interest and fees Defendants charged, collected, contracted for, or received; ii) awarding Plaintiff and the classes

their attorneys' fees and costs; iii) declaring Pennsylvania residents need not pay any interest or fees that aggregate in excess of 6% to Defendants; iv) prohibiting Defendants from charging, collecting, contracting for, or receiving interest and fees that aggregate in excess of 6% from any Pennsylvania resident; v) requiring Defendants to take all necessary actions to release all remaining liens registered with the Pennsylvania Department of Transportation against Plaintiff and the classes and convey proper vehicle title to Plaintiff and the classes; vi) prohibiting Defendants from furnishing derogatory information regarding Plaintiff and the classes to any consumer reporting agencies; and vii) awarding all other relief that is necessary and proper.

## COUNT III
**Violation of the Unfair Trade Practices and Consumer Protection Law**
**73 P.S. §§ 201-1, *et seq.***

93. This claim is brought individually and on behalf of the classes.

94. Plaintiff, the class members, and Defendants are persons, the loans at issue in this case were or will be used to buy goods and services for personal, family, and/or household use, and Defendants' conduct is trade or commerce under the UTPCPL. 73 P.S. §§ 201-2(2)-(3), 201-9.2.

95. Defendants' conduct constitutes unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because Defendants: caused a likelihood of confusion or misunderstanding as to the source, sponsorship,

approval, or certification of goods and services, 73 P.S. § 201-2(4)(ii); caused a likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another, *id.* § 201-2(4)(iii); represented that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they did not have, *id.* § 201-2(4)(v); engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding, *id.* § 201-2(4)(xxi); engaged in conduct the natural consequence of which was to harass, oppress, and abuse persons in connection with the collection of a debt, *id.* § 2270.4(b)(4); used false, deceptive, and misleading representations and means in connection with the collection of a debt, *id.* § 2270.4(b)(5); and used unfair and unconscionable means to collect or attempt to collect a debt, *id.* § 2270.4(b)(6).

96. Defendants' use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates the law. 73 P.S. § 201-3; *id.* § 2270.5(a).

97. Plaintiff and the class members lost money or property as a result of Defendants' violations and therefore are entitled to actual damages, statutory damages, treble damages, as well as reasonable costs and attorneys' fees, and such additional relief the Court deems necessary and proper under 73 P.S. § 201-9.2.

**JURY TRIAL DEMANDED**

Plaintiff requests a jury trial on all claims so triable.

## ARBITRATION CLAUSE OPT-OUT

Crews previously opted-out of the arbitration clause in his loan contract. To the extent these notices were ineffective, Crews gives notice that he opts-out of the arbitration clause in his loan contract (Robert Crews, [redacted] [redacted]; Loan Number: [redacted]; Loan Date: 12/08/2021) and has sent this notice to the notice address provided in his loan contract (Legal Department, P.O. Box 8323, Savannah, Georgia 31412).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. An order certifying the proposed classes, appointing Plaintiff as representative of the proposed classes, and appointing counsel as counsel for the proposed classes;

b. An order awarding actual, statutory, treble, and all other damages available by law, along with pre- and post-judgment interest;

c. An order awarding attorneys' fees and costs;

d. An order declaring Pennsylvania residents need not pay any interest or fees that aggregate in excess of 6% to Defendants;

e. An order prohibiting Defendants from charging, collecting, contracting for, or receiving interest and fees that aggregate in excess of 6% from any Pennsylvania resident;

f. An order providing Plaintiff and the class members restitution for any interest and fees that were paid to Defendants and that aggregate in excess of 6%;

g. An order requiring Defendants to take all necessary actions to release all remaining liens registered with the Pennsylvania

Department of Transportation against Plaintiff and the classes and convey proper vehicle title to Plaintiff and the classes;

h. An order prohibiting Defendants from furnishing derogatory information regarding Plaintiff and the classes to any consumer reporting agencies;

i. An order declaring Defendants' conduct unlawful; and

j. An order awarding all other relief that is just, equitable, and appropriate.

Respectfully submitted,

Dated: February 1, 2022

By: */s/ Kevin Abramowicz*

Kevin Abramowicz
Kevin W. Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*/s/ Brian D. Flick*

Brian Flick (OH #0081605)
Pro Hac Vice Application To Be Submitted
**DannLaw**
15000 Madison Avenue
Lakewood, OH 44107
Tel: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

*Attorneys for Plaintiff and the Putative Classes*