# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT CREWS, individually and on
behalf of all others similarly situated,

        Plaintiff,

    v.

TITLEMAX OF DELAWARE, INC.,
TITLEMAX OF OHIO, INC.,
TITLEMAX OF VIRGINIA, INC.,
TMX FINANCE OF VIRGINA,
INC., TITLEMAX OF
CALIFORNIA, INC., TITLEMAX
OF SOUTH CAROLINA, INC.,
TITLEMAX OF GEORGIA, INC.,
and TMX FINANCE CORPORATE
SERVICES, INC.,

        Defendants.

Case No. 1:22-cv-00168-JPW

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PROVISIONAL CERTIFICATION AND PRELIMINARY INJUNCTION

Kevin Abramowicz
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com

*Attorney for Plaintiff*

*Other Attorneys on Signature*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................ 1

II.    FACTUAL AND LEGAL BACKGROUND ............................... 2

    A.    Defendants Issued A Loan To Plaintiff ............................ 2

    B.    Defendants Regularly Lend Money To Pennsylvania Residents ....... 3

    C.    Defendants' Lending Practices Are Illegal ........................ 4

    D.    Defendants' Illegal Practices Cause Irreparable Harm ..................... 5

III.    PROVISIONAL CLASS CERTIFICATION IS WARRANTED ............... 6

    A.    The Class Sought To Be Provisionally Certified ............... 6

    B.    The Class Satisfies The Rule 23(a) Requirements ........................... 6

        i.    The Class Satisfies Numerosity ............................... 7

        ii.    The Class Satisfies Commonality ........................... 7

        iii.    The Class Satisfies Typicality .................................. 8

        iv.    The Class Satisfies Adequacy ................................. 9

    C.    The Class Satisfies The Rule 23(b)(2) Requirements ..................... 10

IV.    A PRELIMINARY INJUNCTION SHOULD BE ISSUED ..................... 11

    A.    Plaintiff Is Substantially Likely To Succeed On The Merits .......... 12

        i.    Binding precedent requires application of Pennsylvania law to the conduct at issue ..................................... 12

        ii.    Pennsylvania law clearly prohibits the conduct at issue ........ 15

B.    Plaintiff And The Class Are Likely To Suffer Irreparable Harm Without An Injunction ...................................................................... 16

C.    The Balance Of Equities Tips In Plaintiff's And The Class's Favor ............................................................................................... 17

D.    An Injunction Is In The Public Interest ............................................ 18

V.    CONCLUSION ............................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Bedrossian v. Northwestern Mem. Hosp.*,
    409 F.3d 840 (7th Cir. 2005) ............................................................ 16

*C. B. v. Bd. of Sch. Comm'rs*,
    261 F. App'x 192 (11th Cir. 2008) .................................................. 16

*Commonwealth v. TAP Pharmaceutical Prods., Inc.*,
    36 A.3d 1197 (Pa. Cmwlth. 2011) .................................................. 16

*First Western Capital Mgmt. Co. v. Malamed*,
    874 F.3d 1136 (10th Cir. 2017) ...................................................... 16

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
    795 F.3d 380 (3d Cir. 2015) ................................................... 7, 8, 9

*In re Modafinil Antitrust Litig.*,
    837 F.3d 238 (3d Cir. 2016) ............................................................. 7

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ............................................................. 9

*Kaneff v. Del. Title Loans, Inc.*,
    587 F.3d 616 (3d Cir. 2009) ................................................... 12, 13

*Lewis v. Curtis*,
    671 F.2d 779 (3d Cir. 1982) ....................................................... 9, 10

*Madden v. Midland Funding, LLC*,
    237 F. Supp. 3d 130 (S.D.N.Y. 2017) ........................................... 11

*Mayo v. TitleMax of Del.*, No. 21-cv-02964,
    2022 U.S. Dist. LEXIS 2573 (E.D. Pa. Jan. 4, 2022) ...................... 14

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) .......................................................... 6

*Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) .......................................................... 8, 9, 10

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*,
   290 F.3d 578 (3d Cir. 2002) ...................................................... 17, 18

*Osorio-Martinez v. AG United States*,
   893 F.3d 153 (3d Cir. 2018) ............................................................ 17

*Pa. Dep't of Banking v. NCAS of Del., LLC*,
   948 A.2d 752 (Pa. 2008) ................................................................. 15

*Richman v. Watkins*,
   103 A.2d 688 (Pa. 1954) ................................................................. 15

*TitleMax of Del., Inc. v. Weissman*, No. 21-cv-01020,
   2022 U.S. App. LEXIS 1937 (3d Cir. Jan. 24, 2022) ....................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................... 8, 11

*Winter v. Nat. Res. Def. Counsel, Inc.*,
   555 U.S. 7 (2008) .......................................................................... 11

**Statutes**

7 P.S. § 6203.A ............................................................................. 4, 15

7 P.S. § 6203.B ................................................................................. 15

7 P.S. § 6211 .................................................................................... 15

7 P.S. § 6218 ................................................................................. 5, 17

41 P.S. § 201(a) ............................................................................. 4, 15

41 P.S. § 408 .................................................................................... 15

41 P.S. § 501 ................................................................................. 5, 17

41 P.S. § 508 ......................................................................................... 5

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................. 7

Fed. R. Civ. P. 23(a)(1) ......................................................................... 7

Fed. R. Civ. P. 23(a)(2) ......................................................................... 7

Fed. R. Civ. P. 23(a)(3) ......................................................................... 8

Fed. R. Civ. P. 23(a)(4) ......................................................................... 9

Fed. R. Civ. P. 23(b) ............................................................................. 6

Fed. R. Civ. P. 23(b)(2) ....................................................................... 10

# I.    INTRODUCTION

This case concerns a multi-state operation, whereby Defendants issue loans to Pennsylvania residents with interest rates that exceed 100%-150%, and secure those loans by filing liens against a resident's vehicle with the Pennsylvania Department of Transportation. The problem is that Defendants are not licensed to charge, collect, contract for, or receive more than 6% interest from Pennsylvanians. By ignoring this limitation, and charging, collecting, contracting for, and receiving amounts that far exceed Pennsylvania's 6% limit, Defendants cause substantial and irreparable harm to Pennsylvania residents. Specifically, Defendants force Pennsylvanians to divert tens of thousands of dollars to paying illegal usury, or forfeit their motor vehicles, both of which prevent Pennsylvanians from working, paying for food and clothes, and obtaining medical and other necessary services.

The Court should grant Plaintiff's motion for provisional certification and for a preliminary injunction. A class should be provisionally certified and a preliminary injunction should be issued because Third Circuit precedent requires application of Pennsylvania law to Defendants' practices, and Pennsylvania law clearly prohibits Defendants from charging, collecting, contracting for, or receiving over 6% interest from Plaintiff or any class member. As such, the Court should preliminarily enjoin Defendants from charging, collecting, contracting for, or receiving over 6% interest from Plaintiff or any class member.

## II.    FACTUAL AND LEGAL BACKGROUND

### A.    Defendants Issued A Loan To Plaintiff.

Plaintiff is a Pennsylvania resident who lives in York County, Pennsylvania. (Compl. ¶ 5.) Plaintiff owns a 2017 Ford Fusion, which is kept, licensed, registered, and titled in Pennsylvania. (*Id.* ¶¶ 28-29.)

Plaintiff obtained a loan from Defendants[1] at the end of 2021. (Compl. ¶ 23.) Plaintiff needed the loan because work had slowed and another lender denied him credit. (*Id.* ¶¶ 17, 20.) Plaintiff discovered Defendants through an internet search and was told he needed to drive to Defendants' Delaware location to obtain a loan so that Defendants could inspect his vehicle. (*Id.* ¶¶ 18-19, 21.) Defendants assured Plaintiff that the interest rate on his loan would be 12%. (*Id.* ¶ 22.)

The loan was made in the amount of $7,400. (Compl. ¶ 23.) Yet Plaintiff must repay $39,243.91 in interest and fees due to a 155.62% APR. (*Id.* ¶ 24.) To keep his loan current, Plaintiff must make 48 monthly payments of $973.48. (*Id.* ¶ 25.) To ensure Plaintiff pays $39,243.91 of interest for a $7,400 loan, Defendants claimed they will file a lien against Plaintiff's vehicle with the Pennsylvania Department of Transportation. (*Id.* ¶ 30.) If Plaintiff does not pay his loan, Defendants also claimed they will repossess his vehicle. (*Id.* ¶ 32.)

---

[1] TMX Finance Corporate Services, Inc. is referred to as "TMX," and the remaining Defendants are referred to collectively as the "State Defendants."

## B. Defendants Regularly Lend Money To Pennsylvania Residents.

Defendants are an organization that consists of 18 state-based entities, including the State Defendants, and TMX, which oversees the operation of the state-based entities, including the State Defendants. (Ex. A, 137:11-138:12.) According to Defendants, they offer "installment loans to consumers secured by the borrower's motor vehicle." (Ex. B, ¶ 2.)

Since 2013, Defendants issued thousands of loans to Pennsylvania residents. For example, from 2013 to 2019, Defendants recorded at least 2,000 liens with the Pennsylvania Department of Transportation. (Ex. C, ¶ 6.) And despite representing they had stopped making such loans, (Ex. A, 13:20-14:21, 17:15-19:1, 24:10-18, 33:19-34:13, 35:14-24, 36:18-20, 38:15-21, 44:6-25, 151:1-8), Defendants recently claimed to have issued over 100 loans to Pennsylvania residents in just a few months of business. (Ex. D, ¶ 18.) Defendants also claimed that they conservatively expected to issue over one thousand loans to Pennsylvania residents over the next eighteen months, and that they expected to charge, collect, contract for, and receive over $35,000,000 of interest on those loans. (*Id.* ¶¶ 24-25.)

The loans Defendants issued to Pennsylvania residents have high interest rates and are secured by a motor vehicle. The rates on Defendants' loans uniformly exceed 100%. (Compl. ¶ 42; Ex. E; *cf.* Ex. A, 147:11-18.) And for each loan Defendants issue to a Pennsylvania resident, Defendants filed a lien against the resident's motor

vehicle with the Pennsylvania Department of Transportation. (Compl. ¶¶ 43-44; Ex. A, 82:11-18, 145:2-9.)[2]

## C. Defendants' Lending Practices Are Illegal.

The interest rates Defendants charge, collect, contract for, and receive are illegal under Pennsylvania law. The general usury rate in Pennsylvania is 6%. 41 P.S. § 201(a). If a person or entity cannot charge more than the general rate, it cannot charge, collect, contract for, or receive interest and fees that aggregate in excess of that rate. *Id.*; 7 P.S. § 6203.A. Defendants are not licensed under any Pennsylvania statute to charge more than the general 6% rate, (Compl. ¶¶ 47-48, 87-88), which means Defendants cannot charge, collect, contract for, or receive more than that rate. As such, Defendants' practice of charging, collecting, contracting for, and receiving more than 6% interest and fees is illegal under Pennsylvania law.

_____

[2] Despite claiming in other cases that they do not solicit loans to Pennsylvanians, the fact that Defendants conservatively estimate generating $35,000,000 of interest from Pennsylvania residents in just 18 months of business speaks for itself. Additionally, Defendants testified that: they run advertisements on television stations that reach the Commonwealth, (Ex. A, 114:22-115:8); they have an internet presence that is accessible in the Commonwealth, (*id.* at 55:11-17); Pennsylvania consumers that call Defendants are instructed to come to Defendants' out-of-state stores to further discuss Defendants' loan products, (*id.* at 59:23-60:12, 62:20-63:14); Pennsylvania residents can make payments from Pennsylvania, (*id.* at 67:8-68:13, 71:11-72:2); Defendants call consumers in Pennsylvania, (*id.* at 83:3-84:4); and Defendants ran a referral program that paid a $50 referral fee for any loans that were made to Pennsylvania residents, (*id.* at 117:1-9). Aside from the fact that eighteen months of business will conservatively generate $35,000,000 of charges from Pennsylvania residents, Defendants' contacts with Pennsylvania residents and the Commonwealth are extensive.

**D. Defendants' Illegal Practices Cause Irreparable Harm.**

Although Plaintiff was able to make the first payment on his loan, (Compl. ¶ 26), he filed this action and seeks a preliminary injunction because he, along with thousands of other Pennsylvania residents, will suffer irreparable harm if required to continue paying usury to Defendants. The only way to afford to pay Defendants' usury charges is to divert money that consumers otherwise need to pay for clothing, food, housing, healthcare, transportation, and other basic living expenses. (Compl. ¶¶ 33-34, 62-70.) Pennsylvania's general assembly has already held that paying usurious interest and diverting funds needed for basic necessities is an irreparable injury, as the taking of such usury qualifies as a crime, 41 P.S. § 508; 7 P.S. § 6218, and has instructed that Pennsylvania consumers shall not be required to pay such charges and may retain and deduct such amounts, 41 P.S. § 501. Also, few (if any) consumers can afford to pay Defendants' charges because those charges add tens of thousands of dollars of unlawful interest and fees to loans. (Compl. ¶¶ 62-70.) These obscene charges result in default, which then places a consumer's vehicle at risk of repossession. (*Id.*) When vehicles are repossessed, consumers are unable to work, buy clothes or food, obtain medical services, or engage in a host of other activities necessary to live. (*Id.*)

### III.   **PROVISIONAL CLASS CERTIFICATION IS WARRANTED**

Courts may provisionally certify classes seeking preliminary injunctive relief. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). All that is required is that the proposed class meets the requirements of Rule 23(a) and that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* (citing Fed. R. Civ. P. 23(b)). As explained below, the class Plaintiff seeks to provisionally certify satisfies the requirements of Rule 23(a) and Rule 23(b)(2). The Court should grant this motion and provisionally certify the proposed class.

#### A.   **The Class Sought To Be Provisionally Certified.**

Under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff seeks to provisionally certify the following class: "All Pennsylvania residents who obtained or will obtain a loan from Defendants or any affiliated companies and whose loan provides for or will provide for interest and fees that aggregate in excess of 6% simple interest per year."

#### B.   **The Class Satisfies The Rule 23(a) Requirements.**

Under Rule 23(a), a movant must prove that: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the claims or

defenses of the class; and (4) the class representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). All Rule 23(a) requirements are satisfied here.

### i. The Class Satisfies Numerosity.

To establish numerosity, a class must be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Numerosity generally is satisfied if a class has more than forty members. *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016).

Numerosity is satisfied here. Defendants recently represented that they made loans to more than 100 Pennsylvania residents in a few months' time, and that they conservatively anticipate making over a thousand more loans in the coming months. (Ex. D, ¶¶ 18, 24-25.) Not only that, but Defendants made at least 2,000 loans to Pennsylvania residents from 2013 to 2019. (Ex. C, ¶ 6.) Given the fact that the proposed class contains thousands of individuals, the proposed class is so numerous that joinder is impracticable. Numerosity is satisfied.

### ii. The Class Satisfies Commonality.

To establish commonality, common questions of law and fact must exist. Fed. R. Civ. P. 23(a)(2). The focus is "on whether the defendant's conduct was common as to all of the class members." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015). "[A]s long as all putative class members

were subjected to the same harmful conduct . . . , Rule 23(a) will endure many legal and factual differences among the putative class members." *Id.* "What matters . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis omitted).

Commonality is satisfied here. There is a single common question that will drive the resolution of each of the class members' claims in a single stroke: whether Pennsylvania law applies to Defendants? If it does, then each of the loans made to the class members is unlawful and Defendants may not collect interest and fees that aggregate in excess of 6% simple interest per year. Because the claims of Plaintiff and the class members can be answered in a single stroke, common questions of law and fact exist. Commonality is satisfied.

### iii.    The Class Satisfies Typicality.

To establish typicality, the claims or defenses of the representative parties must be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement[.]" *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). What matters is that the class representative's "claim arises from the same event or practice or course of conduct that gives rise to the

claims of the class members," and that the claims of the class representative and the members of the class are "based on the same legal theory." *Id.*

Typicality is satisfied here. Plaintiff and the class members challenge the same unlawful conduct, namely, Defendants' charging, collecting, contracting for, and receiving greater than 6% combined interest and fees on loans that are made to Pennsylvania residents and that are secured by liens recorded with the Pennsylvania Department of Transportation. Plaintiff's and the class's claims arise from a uniform course of conduct and those claims are based on the same legal theory, namely, that Defendants' conduct is an unlawful attempt to evade Pennsylvania law. Typicality is satisfied.

### iv.    The Class Satisfies Adequacy.

To establish adequacy, the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy primarily examines "the interests and incentives of the class representatives, and the experience and performance of class counsel." *In re Cmty. Bank*, 795 F.3d at 392; *see In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016). As applied to class representatives, adequacy does not concern "whether [the] plaintiff personally derived the information pleaded in [a] complaint or whether he will personally be able to assist his counsel." *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir. 1982). All that is required is that class representatives understand

their duties to the class, are willing to fulfill those duties, and have no interests that conflict with those of the class. *See id.*

Adequacy is satisfied here. Plaintiff will protect the interests of the class, will fulfill his duties to litigate this matter on their behalf, and understands he must look out for his fellow class members and protect their interests. (Crews Dec., ¶¶ 18-23.) Regarding undersigned counsel, they have the experience and ability to represent the class and litigate this matter on their behalf. Counsel is well-versed in class litigation and the law and legal theories at issue here, and have been certified as class counsel many times. (Abramowicz Dec., ¶¶ 10-11.) Counsel also performed substantial work in preparing to bring this case and obtain a preliminary injunction on behalf of Plaintiff and the class members. (*Id.* ¶ 9.) Adequacy is satisfied.

### C. The Class Satisfies The Rule 23(b)(2) Requirements.

Rule 23(b)(2) actions are appropriate when the defendant acted or refused to act on grounds generally applicable to the class, such that injunctive or declaratory relief is appropriate with respect to the class as a whole. Fed. R. Civ. P. 23(b)(2). The "role of (b)(2) class actions [is to] remedy[] systemic violations of basic rights of large . . . classes." *Neal*, 43 F.3d at 64. Rule 23(b)(2) classes "foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights," *id.*, and are appropriate so long

as "a single injunction or declaratory judgment would provide relief to each member of the class," *Dukes*, 564 U.S. at 360.

The requirements of Rule 23(b)(2) are satisfied here. First, the requested injunctive and declaratory relief will benefit the entire class, as they will not be required to pay interest and fees that aggregate above 6% and will not be at risk of having their vehicles repossessed. *See Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 159-60 (S.D.N.Y. 2017). Second, Defendants have acted on grounds generally applicable to the class by entering into loan agreements that require the repayment of interest and fees that exceed 6% and by seeking to charge, collect, contract for, and receive such interest and fees. *Id.* at 160. The requirements of Rule 23(b)(2) are satisfied.

## IV.    <u>A PRELIMINARY INJUNCTION SHOULD BE ISSUED</u>

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008). The factors necessary to issue a preliminary injunction are met. As a result, the Court should grant Plaintiff's motion and issue a preliminary injunction against Defendants.

**A.    Plaintiff Is Substantially Likely To Succeed On The Merits.**

Plaintiff brings this action under various Pennsylvania consumer protection statutes challenging the high interest auto-title loans Defendants make, and seeking to, among other things, enjoin Defendants from charging, collecting, contracting for, or receiving interest and fees that aggregate in excess of 6% simple interest per year. Plaintiff is likely to succeed on the merits of his claim and his request for injunctive relief because binding precedent requires application of Pennsylvania law, and that law clearly prohibits Defendants' conduct. As such, the likelihood of success factor weighs in favor of granting a preliminary injunction.

**i.    Binding precedent requires application of Pennsylvania law to the conduct at issue.**

In *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616 (3d Cir. 2009), the Third Circuit held that Pennsylvania law governs auto-title loans that are made outside of Pennsylvania to Pennsylvania residents. There, a Pennsylvania resident drove out of state to Delaware, where an auto-title lender issued her a 300% interest loan and filed a lien against her vehicle with the Pennsylvania Department of Transportation. *Id.* at 618. The Third Circuit held that Pennsylvania's law governed that loan contract, even though the loan was made in Delaware and had a Delaware choice-of-law clause, because Pennsylvania had a "materially greater interest" than Delaware in enforcing its usury laws. *Id.* at 624.

*Kaneff* is binding here and requires application of Pennsylvania law because the facts of this case and those of *Kaneff* are identical. Like *Kaneff*, Pennsylvania "is where [Plaintiff and the members of the class] live," Pennsylvania is "the location of the collateral," and Defendants must "enter Pennsylvania in order to repossess the car[s]." 587 F.3d at 623. Also, like *Kaneff*, Plaintiff's and the class members' loans were made in Delaware between Pennsylvania residents who drove to Delaware and a Delaware corporation with no offices in Pennsylvania. *Id.* And, again, like *Kaneff*, "Pennsylvania will have to live with the aftermath of the transaction[s]" at issue.[3] *Id.* Finally, as *Kaneff* held, given these facts, Pennsylvania has a "materially greater interest" than Delaware in applying its law to the loan contracts at issue. *Id.* at 624. Pennsylvania's interest "represents such a fundamental policy that [the Court] must apply Pennsylvania law."

---

[3] For example, Plaintiff currently is scheduled to pay over $39,000 in interest for a $7,400 loan that should yield less than $1,000 of interest under Pennsylvania law. (Compl. ¶¶ 63-64.) The $38,000 delta is money that could be spent at Pennsylvania businesses, which pay taxes to the Commonwealth. But not only does Defendants' usury divert money from Pennsylvania businesses, it also diverts money Plaintiff needs to support himself and his family. By diverting $38,000 of support to Plaintiff and his family, Defendants make it likely that Plaintiff and his family will need to rely on social programs for various expenses, like clothing, food, and healthcare. And, in a similar vein, if Plaintiff's car is repossessed, because he cannot afford the $39,000 in interest that Defendants are charging on a $7,400 loan, Plaintiff may be unable to work, buy food or clothes, obtain medical services, or engage in a host of other activities. In that event, Pennsylvania's unemployment compensation system, housing programs, food assistance programs, emergency services, and other social programs will be needed to fill the gap. The Commonwealth is the state that must deal with all of the effects of Defendants' loans; Delaware must deal with none.

Many courts have followed *Kaneff* and have recognized it as binding in cases that present facts identical to those presented here. *See Mayo v. TitleMax of Del.*, No. 21-cv-02964, 2022 U.S. Dist. LEXIS 2573, at *1, 5-7 (E.D. Pa. Jan. 4, 2022) (applying *Kaneff* to one of the Defendants sued here for conduct that is identical to that alleged here, and stating that *Kaneff* "is not only persuasive—it has precedential effect"); *Gregoria v. Total Asset Recovery, Inc.*, No. 12-cv-04315, 2015 U.S. Dist. Lexis 1818, at *4, 7-11 n.6 (E.D. Pa. Jan. 7, 2015) (same).

Not only that, but just last month, the Third Circuit held that the Pennsylvania Department of Banking could investigate some of the Defendants. *TitleMax of Del., Inc. v. Weissman*, No. 21-cv-01020, 2022 U.S. App. LEXIS 1937 (3d Cir. Jan. 24, 2022). The Court held that "Pennsylvania has a strong interest in prohibiting usury" and that "[a]pplying Pennsylvania's usury laws to [Defendants'] loans furthers that interest." *Id.* at *15. Although this analysis occurred in the context of a commerce clause argument, it still applies here and demonstrates that Pennsylvania law applies because Pennsylvanians make "payments to [Defendants] while physically present in [Pennsylvania]," Defendants' loans "grant [Defendants] a security interest in [m]otor [v]ehicle[s], which [for] Pennsylvania borrower[s] [are] Pennsylvania-registered automobile[s]," Defendants "record[] these liens with PennDOT and may repossess the vehicle if the consumer defaults on his loan," and Defendants "take[] an interest in property located and operated in Pennsylvania." *Id.* at *11.

In short, Pennsylvania law applies here because Pennsylvania has the greatest interest in applying its usury laws to the loan contracts at issue. Plaintiff is not only likely to win on this point, but must, given binding Third Circuit precedent. Any argument to the contrary must be rejected.

### ii. Pennsylvania law clearly prohibits the conduct at issue.

In Pennsylvania, non-banks without any Pennsylvania license cannot charge, collect, contract for, or receive interest and fees that exceed 6% simple interest per year. The general usury limit in Pennsylvania is 6% simple interest per year. 41 P.S. § 201(a). This limit cannot be waived. *Id.* § 408. Additionally, if a non-bank is not licensed to exceed the general usury limit, it cannot charge, collect, contract for, or receive interest and fees that aggregate in excess of 6%. 7 P.S. §§ 6203.A, 6203.B, 6211. These prohibitions further Pennsylvania's "fundamental public policy" on the "prohibition of exploitative lending." *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 759 n.9 (Pa. 2008). And the Pennsylvania Supreme Court has long recognized that this policy cannot be thwarted by circumvention or subterfuge. *Id.* (citing *Richman v. Watkins*, 103 A.2d 688, 691 (Pa. 1954)).

Pennsylvania law clearly prohibits Defendants' conduct because Defendants are non-banks, are not licensed under any Pennsylvania statute, and uniformly charge, collect, contract for, and receive interest and fees that aggregate above 6% on every loan they make to Pennsylvania residents. Indeed, Plaintiff's loan contract

provides for more than 150% combined interest and fees, and many (if not all) of the class members' loans provide for combined interest and fees that yield rates in excess of 100%. Pennsylvania law clearly prohibits Defendants from charging, collecting, contracting for, and receiving more than 6% interest and fees; there cannot be any serious argument to the contrary.

### B. Plaintiff And The Class Are Likely To Suffer Irreparable Harm Without An Injunction.

"[I]n limited circumstances courts may presume irreparable harm and grant injunctive relief." *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017). One example is "when a statute mandates injunctive relief as a remedy for a violation," which "effectively constrain[s] . . . traditional discretion to determine whether such relief is warranted." *Id.*; *Commonwealth v. TAP Pharmaceutical Prods., Inc.*, 36 A.3d 1197, 1236-38 (Pa. Cmwlth. 2011) ("[S]tatutory provisions may alter the elements needed to obtain a statutorily authorized injunction."). "In that case, courts presume irreparable harm and grant an injunction even if the moving party failed to show it." *Id.*; *see also C. B. v. Bd. of Sch. Comm'rs*, 261 F. App'x 192, 194 (11th Cir. 2008) (quoting *Bedrossian v. Northwestern Mem. Hosp.*, 409 F.3d 840, 843 (7th Cir. 2005)) ("[U]nless a statute clearly mandates injunctive relief for a particular set of circumstances, the courts are to employ traditional equitable considerations (including irreparable harm) in deciding whether to grant such relief.").

In this case, the LIPL mandates injunctive relief, which means irreparable harm must be presumed. Specifically, the LIPL states:

> When a rate of interest for the loan or use of money, exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor ***shall not be required*** to pay to the creditor the excess over such maximum interest rate and it ***shall be lawful*** for such borrower or debtor, at his option, to retain and deduct such excess from the amount of such debt providing the borrower or debtor gives notice of the asserted excess to the creditor.

41 P.S. § 501 (emphasis added). This language clearly mandates that consumers who enter into contracts that provide for usury shall not be required to pay excess interest and fees, and shall retain and deduct any such amounts. That is what happened here: Plaintiff and the class members entered into contracts that provided for interest and fees well in excess of the LIPL's 6% rate cap. Since the LIPL mandates injunctive relief in the form of prohibiting the payment of interest and fees that exceed 6%, and the deduction and retention of such amounts, the Court must presume that irreparable harm exists in this case.

### C. The Balance Of Equities Tips In Plaintiff's And The Class's Favor.

Once the first two elements of an injunction are satisfied, the district court then performs a balancing test "to determine whether the prongs, taken together, balance in favor of granting the requested preliminary relief." *Osorio-Martinez v. AG United States*, 893 F.3d 153, 178 (3d Cir. 2018). "[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Novartis*

*Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 597 (3d Cir. 2002).

Here, the balance of equities clearly tips in Plaintiff's and the class's favor. As explained above, Plaintiff and the class are not only likely to succeed on the merits, but their victory is mandated by at least two Third Circuit cases. Not only that, but the LIPL mandates that Defendants be prohibited from charging, collecting, contracting for, or receiving interest and fees above 6%, and further mandates that Plaintiff and the class be permitted to deduct and retain such amounts. Since binding precedent mandates a ruling in favor of Plaintiff and the class, and since the LIPL mandates that an injunction be issued against Defendants, the balance of the equities clearly tips in favor of Plaintiff and the class.

## D.  An Injunction Is In The Public Interest.

Pennsylvania residents, including Plaintiff and the class, currently suffer under Defendants' usurious loans every day, and many more will likely sign up for such loans by the day and be trapped by Defendants' usurious lending practices. These practices threaten Pennsylvanians' ability to pay for basic expenses given the obscene interest rates Defendants charge on their loans. Not only that, but if residents are unable to pay Defendants' unconscionable usury charges, their vehicles may be repossessed. If this happens, Pennsylvania residents could lose their ability to work, obtain medical services, feed their families or themselves, and engage in practices

most take for granted during everyday life. Given the great injuries that are already being suffered and will continue to be inflicted on the public by Defendants, a preliminary injunction should be issued against Defendants.

## V.    **CONCLUSION**

For all of the reasons explained herein, the Court should provisionally certify the proposed class and should preliminarily enjoin Defendants from charging, collecting, contracting for, or receiving over 6% interest and fees from Plaintiff and each of the class members.

Respectfully submitted,

Dated: February 1, 2022    By:    /s/ Kevin Abramowicz
Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

/s/ Brian D. Flick
Brian Flick (OH #0081605)
Pro Hac Vice Application To Be
Submitted
**DannLaw**
15000 Madison Avenue
Lakewood, OH 44107
Tel: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

*Attorneys for Plaintiff and the Putative
Classes*

## **L.R. 7.8(B)(2) CERTIFICATION**

I certify this brief contains 4,523 words, including all footnotes, as determined using the Microsoft Word Count function.

*/s/ Kevin Abramowicz*
Kevin Abramowicz