IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT CREWS, individually and on behalf of all others similarly situated, | : | Civil No. 1:22-CV-00168 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TITLEMAX OF DELAWARE, INC., TITLEMAX OF OHIO, INC., TITLEMAX OF VIRGINIA, INC., TMX FINANCE OF VIRGINIA, INC., TITLEMAX OF CALIFORNIA, INC., TITLEMAX OF SOUTH CAROLINA, INC., TITLEMAX OF GEORGIA, INC., and TMX FINANCE CORPORATE SERVICES, INC., | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is a motion to dismiss the complaint filed by Plaintiff Robert Crews ("Crews") and to strike the class that Crews therein seeks to represent. The motion was filed by Defendants TitleMax of Delaware, Inc. ("TitleMax Delaware"), TitleMax of Ohio, Inc. ("TitleMax Ohio"), TitleMax of Virginia, Inc., TitleMax of California, Inc., TitleMax of South Carolina, Inc., TitleMax of Georgia, Inc., and TMX Finance Corporate Services, Inc., (collectively, "TitleMax") pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(2), and 12(f). (Doc. 27.) Crews brought this action which alleges that TitleMax, by commercially lending money to Pennsylvania residents in excess of

1

6% interest and fees per year, has violated Pennsylvania usury laws and has specifically violated Pennsylvania's Loan Interest and Protection Law ("LIPL"), 41 Pa. Stat. Ann. §§ 101, *et seq.*; the Consumer Discount Company Act ("CDCA"), 7 Pa. Stat. Ann. §§ 6201, *et seq.*; and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1, *et seq.* (Doc. 1, pp. 13–17.)[1] For the reasons that follow, the motion will be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Late in 2021, Crews, a Pennsylvania resident, searched on the internet for a lender, which led him to TitleMax Delaware. (Doc. 1, ¶¶ 17–18.) To obtain a loan, Crews traveled to Delaware so that TitleMax Delaware could inspect his vehicle, which would secure the loan. (*Id.* ¶ 19.) According to Crews' complaint, a manager at TitleMax Delaware informed Crews that the interest rate for his $7,400 loan, issued on December 8, 2021, would be 12%. (*Id.* ¶¶ 22–24.) Section 25 of the loan agreement is titled "class action waiver, mass action waiver." (Doc. 32-1, p. 11.)[2] Section 25 stands out in the loan agreement because, unlike most

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[2] Although the loan agreement was not attached to the complaint, the court may consider it as the complaint's underlying claims are based on the agreement. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[D]ocument[s] integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (emphasis omitted) (internal quotation marks omitted).

sections, its typeface is entirely in bold and caps.  The section reads, in part, that "the borrower hereby waives its right to do any of the following . . . (a) serve as a private attorney general or in a representative capacity . . . (c) bring or be a class member in a class action." (*Id.*)  Section 27 of the loan agreement contains an extended arbitration clause in chart form.  (*Id.* at 11–15.)  It provides, in part, that TitleMax will pay the arbitration fees for arbitration claims brought in good faith by the borrower.  (*Id.* at 14.)  It also provides borrowers the opportunity to opt out of the arbitration clause within 60 days.  (*Id.* at 13.)

      Prior to the events at issue in this dispute, TitleMax was a party to another suit, which is relevant to the analysis here.  In *TitleMax of Delaware, Inc. v. Weissman*, 505 F. Supp. 3d 353, 354 (D. Del. 2020) ("*Weissmann I*"), the United States District Court for the District of Delaware held that Pennsylvania's usury laws, such as the CDCA and LIPL, did not apply to loans issued in states other than Pennsylvania.  This decision was handed down the year before Crews took out his loan from TitleMax Delaware.  Then in 2022, after Crews had taken out his loan, the Third Circuit decided *Weissman II* in which it reversed *Weissmann I*.  In doing so, the court determined that the Pennsylvania usury laws do apply to loans TitleMax Delaware, TitleMax Ohio, and TMX Finance Virginia entered into with Pennsylvanians.  *See TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 241 (3d Cir. 2022).

Crews filed his complaint, which included class action allegations, on February 1, 2022. (Doc. 1 ¶¶ 71–80.) On April 4, 2022, TitleMax filed the instant motion to dismiss, for failure to state a claim and to strike class allegations. (Doc. 27.) The parties briefed the motion and, pursuant to this court's order, provided supplemental briefing regarding the issue of a class action waiver. (*See* Docs. 32, 36, 40, 43, 44, 52, 54.) The motion is ripe for disposition.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and, based on the allegations in the complaint, the amount in controversy exceeds $75,000. Furthermore, venue is proper under 28 U.S.C. § 1391 because a substantial part of the property that is the subject of the action is situated within this district.

## STANDARD OF REVIEW

TitleMax seeks to strike the class allegations set forth in the complaint pursuant to Federal Rule of Civil Procedure 12(f). Pursuant to Rule 12(f), a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Rule 23(c)(1)(A) directs that "[a]t an early practicable time . . ., the court must determine by order whether to certify the action as a class action." Per Rule 23(d)(1)(D), the court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that

the action proceed accordingly." While certifying a class often requires fact discovery, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). However, courts may grant a motion to strike class allegations before discovery only in the "rare few" cases where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *In re Geisinger Health & Evangelical Cmty. Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-CV-00196, 2021 WL 5330783, at *5 (M.D. Pa. Nov. 16, 2021) (quoting *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011), *opinion reinstated in part*, No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012)).

TitleMax also seeks to dismiss the entire complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. Pursuant to a 12(b)(6) motion, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

TitleMax likewise seeks dismissal of Crews' complaint against all Defendants other than TitleMax Delaware and TitleMax Ohio pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The court, in determining whether it has personal jurisdiction over a defendant, must take the facts alleged by the plaintiff as true and construe disputed facts in the plaintiff's favor. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). At this stage of the case, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id.* (internal quotations omitted) (quoting *O'Connor*, 496 F.3d at 316). Courts will typically allow limited jurisdictional discovery when a plaintiff's

claim of jurisdiction "is not clearly frivolous." *Metcalfe*, 566 F.3d at 335–36 (citing *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983)).

## DISCUSSION

### A. Class Allegations

TitleMax asserts multiple arguments in support of its request to strike the class allegations. One is rooted in the fact that the loan agreements that Crews and the purported class members entered all contain class action waivers. (Doc. 32, pp. 19–20.) TitleMax submits that Pennsylvania courts regularly hold arbitration and class action waivers to be valid. (*Id.* at 20.) TitleMax further submits that Pennsylvania courts routinely find such waivers to preclude class certification as a matter of law. (*Id.* at 20–21 (citing *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021); *Correa v. N. Am. Recovery*, No. CV 18-1375, 2019 WL 2426439, at *5 (E.D. Pa. June 7, 2019)).) Therefore, TitleMax argues that the class action waivers in the loan agreements at issue preclude class certification. (*Id.* at 22; Doc. 52, p. 1–2.)[3]

---

[3] TitleMax also argues that Crews' purported class fails as overly broad because it includes individuals who have not opted out of valid arbitration clauses. (Doc. 32, pp. 19–20.) Because the purported class includes individuals who would be bound by arbitration clauses, TitleMax argues that there is no typicality and Crews is not a suitable class representative. (*See* Doc. 40, pp. 7–9 (citing cases).) The court does not address this argument in the present memorandum because the court concludes that the class waiver is enforceable and precludes class certification.

At the court's request, the parties provided supplemental briefing to more directly address the issue of whether the class waiver is enforceable and, if so, whether it precluded class certification. In its supplemental briefing, TitleMax points to Supreme Court precedent upholding class waivers. (Doc. 52, p. 1 (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).) These cases, without specifically limiting their application to arbitration proceedings, enforced class waivers in the context of agreements subject to the FAA. TitleMax also cites persuasive authority upholding stand-alone class waivers absent an arbitration agreement. (*Id.* at 1–2 (citing *Korea Week, Inc. v. Got Capital, LLC*, No. CV 15-6351, 2016 WL 3049490, at *9–11 (E.D. Pa. May 27, 2016); *U1it4Less, Inc. v. FedEx Corp.*, No. 11-cv-1713, 2015 WL 3916247, at *3–4 (S.D.N.Y. June 25, 2015); *Palmer v. Convergys Corp.*, No. 7:10-cv-145, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012)).) The court in *Korea Week* found that its conclusion that "class action waivers outside of arbitration are enforceable" was supported by the Supreme Court's decision in *Italian Colors*. 2016 WL 3049490, at *9. The court in *U1it4Less* came to a similar conclusion. 2015 WL 3916247, at *4 ("Nothing in *Italian Colors* suggests that class action waivers contained in a provision also containing an arbitration agreement should

8

be treated as more sacrosanct than waivers in context of a contract without an arbitration agreement.").

In countering this argument, Crews relies heavily on *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010).  In *Shady Grove*, the United States Supreme Court concluded that a state statute, which would preclude class action, could not apply in diversity cases because it conflicted with Rule 23(b).  559 U.S. at 393–94.  Crews argues that if "state legislatures cannot destroy" the discretion of a plaintiff to bring a class action pursuant to Rule 23, "by statute . . . [then] lenders may not destroy it by contract." (Doc. 54, p. 1.)

In effect, Crews argues that class action waivers are uniformly invalid.  While Crews recognizes that class waivers may be enforced in arbitration proceedings, he maintains that is only the case because "such waivers are governed by the Federal Arbitration Act ["FAA"]."  (Doc. 54, p. 2.)  His argument proceeds that arbitral waivers can be enforced because the FAA allows parties to "design arbitral processes and requires Courts to enforce those agreements."  (*Id.* (citation omitted) (internal quotation marks omitted).)

The court concludes that *Shady Grove* is inapposite.  It does not address whether two parties, through contract, can waive their rights to bring claims as part of a class.  Instead, it relates to whether, in a diversity case in federal court, a state

9

statute can preclude a class certification which would otherwise be allowable under Rule 23. *See Shady Grove*, 559 U.S. at 397.

In framing his arguments, Crews mischaracterizes the issue in this case. The waiver of a right by an individual is not the same thing as the unilateral destruction of a right by statute. Crews waived certain rights in a contract and then tries to repudiate that waiver by pointing to an inapposite case addressing the interplay between state and federal procedural rules. This does not work.

In a footnote, Crews argues that the class action waiver is unconscionable and therefore unenforceable under Pennsylvania law. (Doc. 54, p. 3 n.4.) He asserts without any support that he had no meaningful choice in accepting the class waiver, that there was a disparity in bargaining power, and that the waiver unreasonably favored TitleMax. (*Id.*) But Crews cites no law which binds this court, or convinces it, to find that class waivers are unenforceable generally or in the present instance. Rather than providing substantive argument, the footnote is a combination of legal conclusions and legal citations.

Absent binding precedent to support Crews' arguments, or even applicable persuasive case law, the court is not persuaded. The court finds that the class action waiver is enforceable. Because Crews and the purported class members have waived their right to pursue a class action in their loan agreements, the court concludes that they cannot bring a class action under Rule 23. Because the

requirements for maintaining a class action cannot be met, the court will grant TitleMax's motion to strike class allegations. As a result, the court will dismiss all Defendants except for TitleMax Delaware since they are named only to the extent that there are class claims.

### B. Failure to State a UTCPCL Claim

Although TitleMax's motion to dismiss requests that the court dismiss the entire complaint pursuant to Rule 12(b)(6), TitleMax's brief in support only supports this argument with respect to Count III of the complaint. Count III asserts a claim for a violation of the UTPCPL. (Doc. 1, pp. 12–17.) As the Supreme Court of Pennsylvania observed in *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001), "[t]he UTPCPL's underlying foundation is fraud prevention." The statute prohibits all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. Ann. § 201-3(a). The UTPCPL enumerates twenty distinct "unfair methods of competition" and "unfair or deceptive acts or practices," *see id.* § 201-4(i)–(xx) and contains a catchall provision that further prohibits "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 201-2(4)(xxi). The UTPCPL provides a private right of action to consumers who purchase goods or services and suffer an ascertainable loss as a direct result of an unlawful act or practice. *Id.* § 201-9.2(a).

11

The Supreme Court of Pennsylvania has stated that for a plaintiff to prevail under *any* provision of the UTCPCPL, he or she "must show that [s]he justifiably relied on the defendant's wrongful conduct or representation and that [s]he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).

In TitleMax's motion to dismiss, it submits that Crews' claims fail as a matter of law. (Doc. 32.) First, TitleMax asserts that Crews' claims fail because Crews fails to plead that TitleMax engaged in fraudulent or deceptive practices. (*Id.* at 16.) Second, it argues the claims fail because Crews has not alleged an ascertainable loss as required by the UTPCPL. (*Id.*)

TitleMax argues that, under Pennsylvania law, "deceptive," in the context of the UTPCPL means having "the tendency or capacity to deceive" and "capable of being interpreted in a misleading way." (*Id.* (quoting *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 647–48 (Pa. 2021) (citation omitted).) At the time that Crews took out his loan, the District Court of Delaware had held that Pennsylvania usury laws did not apply to loans which were entered into in Delaware and which included a choice-of-law clause specifying that Delaware law applied. (*Id.*) TitleMax points out that, as soon as *Weissmann II* was decided, it immediately stopped making loans to Pennsylvania residents. (*Id.*) TitleMax points to cases finding that the conduct of defendants "'could not be considered fraudulent, unfair,

12

or deceptive' when they 'disclosed all relevant information in an effort to comply with their understanding of the law at the time of the [transaction].'" (*Id.* at 16–18 (quoting *Ranalli v. Etsy.com, LLC*, No. CV 21-88, 2021 WL 5166568, *3 (W.D. Pa. Nov. 5, 2021); citing *McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 350 (W.D. Pa. June 7, 2021)).)

Crews responds to this argument in a novel way. He argues that TitleMax Delaware, by charging higher rates than allowed by the CDCA and LIPL, was *per se* engaged in deceptive or fraudulent act as defined by the UTPCPL. (Doc. 36, p. 14.) Crews cites no caselaw to support this assertion. Instead, he argues that TitleMax Delaware knew that *Weissmann I* could be overruled, and a different court might find that the CDCA or LIPL applied to TitleMax. (*Id.*) Crews submits other caselaw to suggest that TitleMax should have been on notice that Pennsylvania's usury laws could have applied to it. (*Id.* at 16–17 (citing *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 624 (3d Cir. 2009); *Mayo v. TitleMax of Del.*, No. 21-cv-2964, 2022 U.S. Dist. LEXIS 2573, at *4–5, 18 (E.D. Pa. Jan. 4, 2022)).)[4] Crews implies that, because TitleMax Delaware was on notice that the

---

[4] The court notes that the second of these cases, *Mayo*, occurred *after* Crews took out his loan. And *Kaneff* does not support Crews' proposition that a violation of the LIPL or CDCA is *per se* a violation of the UTPCPL. While *Kaneff* does stand for the proposition that Pennsylvania usury laws apply to car title loans occurring in Delaware, neither *Weissmann I* nor *Weissmann II* mention it.

Pennsylvania usury laws *might* apply to its title loans to Pennsylvanians, their acts were deceptive and therefore violations of the UTPCPL. (*See id.* at 15–17.)

Having considered the parties' arguments, the court concludes that Crews has failed to allege conduct on the part of TitleMax Delaware that provides a claim under the UTPCPL. Crews has not sufficiently pleaded fraudulent or deceptive conduct on which he relied. In essence, Crews alleges that charging fees above 6% has "the tendency or capacity to deceive" consumers into thinking that lenders may charge such amounts. (Doc. 36, p. 15.) But Crews has not cited, nor is the court aware of, any authority to support Crews' proposition that this conduct alone, absent any additional facts, is fraudulent or deceptive. Looking at Crews' loan agreement, the annual percentage rate and finance charge are explicitly and conspicuously stated in a table that is shaded and uses a bold typeface. (Doc. 32-1, p. 8.) Because Crews has failed to plead a UTPCPL claim, the court will not at present determine whether Crews' pleadings allege an ascertainable loss.[5] The court will grant TitleMax's motion to dismiss Crews' UTPCPL claim without prejudice.

---

[5] If Crews amends his complaint and brings a claim under the UTPCPL, the court may then address the issue of ascertainable loss, provided it has subject matter jurisdiction.

## CONCLUSION

For the reasons provided above, the court will strike the class allegations, dismiss all Defendants except for TitleMax Delaware, and dismiss the UTPCPL claim. An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 27, 2023